FILED & ENTERED

JUN 05 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY speters    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>James Grove Seely, III<br>Gabriela Paul<br><br><br><br><br><br>Debtor(s). | Case No.: 2:12-bk-11522-BB<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION DENYING TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY OF ESTATE AND SURCHARGE OF DEBTORS' EXEMPT ASSETS**<br><br>Date:        May 1, 2013<br>Time:       10:00 AM<br>Courtroom: 1475 |

Chapter 7 trustee John J. Menchaca (the "Trustee") moved for turnover of $113,802.13 from debtors James Grove Seely, III and Gabriela Paul (jointly, the "Debtors"), representing $58,259.16 in nonexempt cash that was on hand as of the petition date (the "Prepetition Cash") plus an additional $55,542.98 in nonexempt cash that the Debtors received during the pendency of this bankruptcy case (the "Postpetition Cash").  The trustee based his request for turnover on the contention that these funds were improperly expended without an order of this Court.[1]  As the funds expended no

---

[1]  Although the Debtors obtained authority from the Court by order entered April 26, 2012 to use cash collateral generated by their rental properties for certain purposes, this order did not apply to the Prepetition Cash or the

longer remain in the Debtors' possession, the Trustee sought an order surcharging

proceeds of a personal injury settlement that were paid to Debtors' former counsel,

Thomas E. Kent, to be held in trust pending further order of this Court (the "Exempt

Funds").

For the reasons set forth below, the Court finds that the Trustee failed to

establish that any portion of the Prepetition Cash or the Postpetition Cash was

improperly expended,[2] and, therefore, that his motion for turnover and to surcharge the

Exempt Funds must be denied.  Separate orders to this effect will be entered

concurrently herewith.

# I

# PROCEDURAL HISTORY

The Debtors filed a voluntary chapter 11 petition commencing the above-entitled

bankruptcy case (the "Case") on January 16, 2012.  The Debtors' original schedules

reflected that, as of the petition date, the Debtors owned, among other things:  (1) their

primary residence; (2) three pieces of real property held for rental/investment purposes;

(3) cash in various bank and brokerage accounts totaling $58,259.16; and (4) a

personal injury lawsuit in which the Debtors were the plaintiffs (the "Personal Injury

Action").  In their original Schedule C, the Debtors claimed exemptions in a portion of

the foregoing cash and a portion of the rental income generated by their investment

properties.

On May 10, 2012, the Debtors filed a motion for approval of a compromise of the

Personal Injury Action.  Pursuant to that compromise, the defendants in that action were

to pay $275,000 in full and final settlement of the Personal Injury Action.  On May 17,

2012, the Century Park East Homeowners' Association (the "HOA") filed a response to

---

Postpetition Cash, as these funds did not qualify as cash collateral.

[2] The Court offered to continue the hearing on the Surcharge Motion to give the Trustee an opportunity to submit evidence to establish the extent to which the Debtors had expended the Prepetition Cash or the Postpetition Case for non-ordinary course purposes, but, in light of the relatively limited amount likely to have been expended for such purposes and the very real likelihood that Mr. Kent had already absconded with some or all of the Exempt Funds, the Trustee requested, instead, that the Surcharge Motion simply be denied.  The Court agreed to grant that request.

the Debtors' compromise motion, noting that the HOA had filed a notice of lien on any settlement proceeds generated by the Personal Injury Action and offering to consent to a release of its lien if the settlement proceeds were held in trust pending further order of the Court rather than paid outright to the Debtors.  The HOA noted further in its response to the compromise motion that, contrary to a representation made in that motion, the Debtors had not claimed an exemption in any proceeds generated by the Personal Injury Action.  The HOA also filed on May 17, 2012 a motion to convert the case to chapter 7.

On June 4, 2012, the Debtors filed an amended Schedule C.  This amended schedule deleted the Debtors' claim of exemption with regard to the Prepetition Cash and asserted an entirely different set of exemptions.  Included in the new set of exemptions was a claim of exemption with regard to any proceeds generated by the Personal Injury Action (the "Settlement Proceeds").  The Debtors filed yet another amended version of Schedule C on October 16, 2012.  This third version of the Debtors' Schedule C claimed that the entirety of the Settlement Proceeds was exempt.

The Bankruptcy Court granted the Debtors' motion for approval of compromise by order entered June 18, 2012 and directed that the net Settlement Proceeds (which amounted to $270,357.51) be deposited into the client trust account of the Debtors' then counsel, Thomas E. Kent, and held in trust pending further order of the Court.

Negotiations between the Debtors and the HOA followed.  The parties attended a mediation before the Honorable Scott Clarkson that culminated in a settlement (the "HOA Settlement") that was read into the record at the end of the mediation.  The HOA Settlement provided for, among other things:  (1) $125,000 to be paid to HOA out of the Settlement Proceeds in exchange for a release of claims against the Debtors under sections 523 and 727; (2) allowance of an exemption in the balance of the Settlement Proceeds (the "Net Exempt Funds"); (3) dismissal of a preference action then pending against the HOA; and (4) conversion of the Case to chapter 7.  Although the Debtors later attempted to repudiate the HOA Settlement, on February 13, 2013, the bankruptcy

judge before whom the case was then pending issued an order granting a motion by the

HOA to enforce the HOA Settlement and an order converting the case to chapter 7.

Thereafter, the case was transferred to Judge Sheri Bluebond, and John J. Menchaca

was appointed chapter 7 trustee.

On February 14, 2013, the Debtors filed a motion seeking release of the

Settlement Proceeds on the ground that they are exempt (the "Release Motion").  The

Trustee opposed that motion on the ground that he was preparing, but had not yet had

an adequate opportunity to file, a motion to surcharge the Settlement Proceeds.  At the

initial hearing on the Release Motion, the Court continued the hearing to May 1, 2013,

so that the Trustee could file a surcharge motion and have it heard concurrently with the

Release Motion on May 1.

The Trustee filed a motion to surcharge the Settlement Proceeds on April 5, 2013

[docket no. 340] (the "Surcharge Motion").  The Surcharge Motion was based upon the

Trustee's review of the Debtors' monthly operating reports and bank statements.

Copies of the Debtors' monthly operating reports were attached as Exhibits 1 through

11 to the Surcharge Motion.  Copies of the Debtors' bank statements were attached as

Exhibit 12 to the Surcharge Motion.

Based on his review and analysis of Exhibits 11 and 12 to the Surcharge Motion,

the Trustee calculated that, during the pendency of the Debtors' chapter 11 case, the

Debtors had total receipts, net of deposits attributable to Mr. Seely's social security

benefits, inter-account transfers, reimbursements, refunds and returned purchases, of

$107,935.23.  The Debtors do not dispute that they spent all of these net receipts

together with all of the Prepetition Cash during the pendency of their chapter 11 case for

total disbursements of $166,194.38 during this period.  Of this amount, the Trustee

calculated that $52,392.25 should be characterized as authorized disbursements, [3]

leaving a total of $113,802.13 that in allegedly improper expenditures.  The Trustee

---

[3] This amount consists of payments to the Office of the United States Trustee, payments to professionals employed
in the Case, payments to the HOA and payments to secured lenders.

1   sought by way of the Surcharge Motion to recoup these allegedly unauthorized

2   disbursements by surcharging the Debtors' otherwise exempt funds, namely, the

3   Settlement Proceeds.

4        The Surcharge Motion came on for hearing concurrently with the Release Motion

5   on May 1, 2013.  This memorandum sets forth the basis for the Court's decision to deny

6   the Surcharge Motion and grant the Release Motion.  Separate orders resolving these

7   motions are being entered concurrently herewith.

8   **II**

9   **DISCUSSION**

10        As the Ninth Circuit explained in <u>Latman v. Burdette</u>, 366 F.3d 774 (9th Cir.

11   2004), "the bankruptcy court may equitably surcharge a debtor's statutory exemptions

12   when reasonably necessary both to protect the integrity of the bankruptcy process and

13   to ensure that a debtor exempts an amount no greater than what is permitted by the

14   exemption scheme of the Bankruptcy Code."  <u>Id.</u> at 786.  However, surcharge of a

15   debtor's exemption is an extraordinary remedy -- one that should be applied only where

16   circumstances warrant.   A court's decision to impose a surcharge must be supported

17   by specific findings of fact and conclusions of law which must include a finding of

18   misconduct by the debtor, quantifiable damage to the estate and circumstances that

19   make it equitable to require that such damage be reimbursed from the debtor's

20   exemption.  <u>See</u> <u>Lin v. Siegel (In re Law)</u>, 2006 Bankr. LEXIS 4847 (Bankr. 9th Cir. Dec.

21   29, 2006).  Absent wrongdoing by the debtor, surcharge should not be imposed.

22        Here, the Trustee contends that surcharge is warranted because the Debtors

23   expended assets of the estate to pay their personal living expenses while they were in

24   chapter 11 without first obtaining permission from the Court to do so.  This argument

25   presupposes that the Debtors were required to obtain permission from this Court before

26   making such expenditures.  The Trustee acknowledges that, unless the Court orders

27   otherwise, Bankruptcy Code section 363(c)(1) authorizes a chapter 11 debtor in

28   possession to use, sell or lease property of the estate in the ordinary course of

1   business, if the debtor's business is authorized to be operated, but the Trustee

2   contends that, "The Debtors are individuals who are not operating a business . . . .

3   "Surcharge Motion, p. 8, lines 21-22.[4]    Therefore, the Trustee reasons, the Debtors'

4   personal expenditures were not authorized under section 363(c)(1).  In effect, the

5   Trustee seeks to establish a per se rule that, if an individual chapter 11 debtor fails to

6   obtain a court order authorizing him to spend estate assets for post-petition living

7   expenses, his expenditures will be considered wrongful disbursements that can be

8   charged against his exempt assets.  The Court rejects this proposition as a matter of

9   law.

10       Prior to the adoption of the Bankruptcy Abuse Prevention and Consumer

11   Protection Act of 2005 ("BAPCPA"), the post-petition wages of individual chapter 11

12   debtors were not property of their bankruptcy estates.  Individual chapter 11 debtors in

13   possession used post-petition wages to pay their post-petition living expenses, and

14   section 363(c)(1) never came into play.  After the effective date of BAPCPA, however,

15   chapter 11 debtors' post-petition wages became property of their bankruptcy estates

16   under section 1115(a), and most debtors were left with no alternative but to use estate

17   property to pay their post-petition living expenses.  But must they seek court approval

18   before paying these expenses, or is court approval only required if the proposed

19   expenses do not qualify as ordinary course expenditures?[5]  And is the Trustee correct

20

21

22   [4] This contention is factually incorrect.  The Debtors were, in fact, operating a business -- they had three
     rental/investment properties.  However, this inaccuracy is irrelevant on the facts of this case, as the Trustee chose to
23   treat amounts paid to the holders of secured claims against these properties as authorized disbursements and not to
     seek their recovery.  The only disbursements that the Trustee seeks to recover by way of the Surcharge Motion were
24   disbursements made for the Debtors' personal living expenses and not expenses paid in connection with the
     operation of their business.
25   [5] This opinion discusses whether a debtor in possession is *required*  to seek court approval before paying personal
     expenses from estate property.  This is an entirely separate question from whether, even if such approval is not
26   required, it would be *advisable* for a chapter 11 debtor to seek such approval.  A chapter 11 debtor in possession or
     his counsel might well conclude that it would be in the debtor's best interest to seek such approval, whether or not it
27   is required, in order to put parties in interest on notice as to the amounts the debtor intends to spend on living
     expenses each month, rather than wait until estate assets have been dissipated and another party in interest claims
28   that the debtor's disbursements were unreasonable or excessive (and therefore constitute grounds to warrant the
     appointment of a chapter 11 trustee  or conversion of the case) or did not qualify as ordinary course expenditures.

1  that personal living expenses can never qualify as expenses incurred in the ordinary

2  course of business within the meaning of section 363(c)(1)?

3        Notably, BAPCPA did not create a procedure or establish a standard for the

4  Court to apply to assess whether or not the Court should approve an individual debtor's

5  request for authority to use estate assets to pay personal living expenses.  It is

6  reasonable to assume, therefore, that Congress did not intend to impose a requirement

7  that debtors file such requests.  Further, as BAPCPA served to reduce the distinctions

8  between individual chapter 11 cases and chapter 13 cases, it is reasonable to conclude

9  that Congress intended for post-petition wages in individual chapter 11 cases to receive

10  treatment similar to post-petition wages in chapter 13 cases, as the post-petition wages

11  of chapter 13 debtors had been included in the definition of property of the estate even

12  before the adoption of BAPCPA.

13        In chapter 13 cases, debtors had never been required to obtain court permission

14  before using post-petition wages to pay their ordinary post-petition living expenses.  It is

15  true that chapter 13 debtors encounter strict limitations on how much they may spend

16  on their post-petition living expenses, but these limitations emanate from requirements

17  that govern plan contents and plan confirmation, and not from any prohibition upon or

18  limitation concerning the use of estate assets under section 363.  Notwithstanding

19  section 363(c)(1)'s reference to the ordinary course of a debtor's *business*, because the

20  debtor cannot continue to generate post-petition wages without being able to pay for the

21  personal expenses necessary to permit him to live his life and remain gainfully

22  employed, section 363(c)(1) has generally been understood to authorize chapter 13

23  debtors to pay post-petition living expenses without notice and an opportunity for

24  hearing or a prior court order, so long as such expenses are "ordinary course" rather

25  than unusual or extraordinary.  If a chapter 13 debtor's post-petition living expenses

26  prove unreasonable or excessive, his chapter 13 case will be converted or dismissed,

27  either because his plan was not proposed in good faith or because he is unwilling to

28  devote all of his disposable income to the payment of creditors under his plan, and not

1 | because the debtor failed to obtain prior court approval for the payment of his ordinary

2 | course living expenses during the pendency of the case.

3 |      Rather than struggle to invent out of whole cloth a procedure and standard for

4 | approving requests by chapter 11 debtors for authority to spend property of the estate

5 | for the payment of post-petition living expenses,[6] the court should give section 363(c)(1)

6 | the same interpretation in chapter 11 cases as it has always been understood to have in

7 | chapter 13 cases.  That is, the court should recognize that section 363(c)(1) authorizes

8 | a debtor in possession to use property of the estate to pay post-petition living expenses

9 | without prior court approval, so long as the amounts to be disbursed qualify as "ordinary

10 | course" expenses.  An individual chapter 11 debtor needs to pay his living expenses in

11 | order to continue generating revenues for the estate.  Thus, the payment of ordinary

12 | course living expenses should be treated as being within the debtor's ordinary course of

13 | business for the purpose of interpreting section 363(c)(1).[7]

14 |      The reasoning of In re Goldstein, 383 B.R. 496 (Bankr. C.D. Cal. 2007), supports

15 | this conclusion.  In Goldstein, the bankruptcy court was called upon to consider the

16 | debtors' request to employ a divorce attorney at the expense of the estate.  Noting that

17 | section 1115(a) makes a chapter 11 debtor's post-petition wages property of the estate,

18 | leaving the debtor without the ability to pay a divorce attorney from non-estate assets,

19 | the court in Goldstein began its analysis with the premise that section 363(c) permits a

20 | debtor to use post-petition wages to pay his ordinary course living expenses:  "This

21 | provision [section 363(c)(1)] authorizes a debtor to buy bread and probably to purchase

22 | a ticket to travel to a court hearing.  However, the hiring of divorce counsel is not

23 | typically a transaction in the ordinary course of business."  Id. at 499.  Therefore, the

24 |

25 | ────────────────────
[6] See generally In re Villalobos, BAP Nos. NV-11-1061-HKwJu, NV-11-1082-KHwJu, 2011 Bankr. LEXIS 4329
26 | (Bankr. 9th Cir. August 19, 2011) (noting the uncertainty in the law as to what standard a bankruptcy court should apply to assess whether to approve a debtor's budget and remanding for the court to articulate the legal rule being
27 | applied and the findings of fact that support whatever rule the court elects to apply) for an example of the challenges that such an approach presents.
[7] Whether or not a given expense is an ordinary course expense is a question of fact that may require consideration
28 | of both a vertical and a horizontal test of ordinariness.  See In re Dant & Russell, Inc., 853 F.2d 700 (9th Cir. Or. 1988).

1  debtors could only use property of the estate to employ divorce counsel after notice and

2  a hearing under section 363(b).  Had the debtors merely been requesting authority to

3  pay undisputedly ordinary living expenses, the clear view of the bankruptcy judge in

4  <u>Goldstein</u> is that bankruptcy court approval would not have been required.

5                                               III

6                                         **CONCLUSION**

7          As the Trustee has waived the right to argue that any of the Debtors' post-petition

8  disbursements were for non-ordinary course expenses, <u>see</u>, <u>supra</u> at n. 2, the Trustee

9  has not established that the Debtors engaged in any wrongdoing when they expended

10  the Prepetition Cash and the Postpetition Cash to pay their post-petition living

11  expenses.  Therefore, the Court cannot find circumstances that warrant the imposition

12  of a surcharge on the Exempt Funds to enable the estate to recoup these expenditures.

13  Thus, the Surcharge Motion must be denied in its entirety.

14          Further, as no party in interest has articulated any other basis for objection to the

15  Debtors' claim of exemption with regard to the Settlement Proceeds,[8] Debtors are

16  entitled to an order authorizing and directing their former counsel, Thomas E. Kent, to

17  release from his trust account and pay the Debtors the Net Exempt Funds.  Orders on

18  both the Surcharge Motion and the Release Motion consistent with this memorandum

19  are being entered concurrently herewith.

20          **IT IS SO ORDERED.**

21                                           # # #

22

23

24

25      Date: June 5, 2013

26                                                 Sheri Bluebond
                                                   United States Bankruptcy Judge

27

28

---

[8] Moreover, one of the provision of the HOA Settlement expressly provided for the recognition of an exemption in the balance of the Settlement Proceeds remaining after payment of $125,000 to the HOA.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): ) **MEMORANDUM DECISION DENYING TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY OF ESTATE AND SURCHARGE OF DEBTOR'S EXEMPT ASSETS** was entered on the date indicated as ΑEntered@ on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Β Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*) June 5, 2013, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

☒    Service information continued on attached
page

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐    Service information continued on attached
page

**3.    TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an ΑEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an ΑEntered@ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐    Service information continued on attached
page

Electronic Mail Notice List:

- Richard J Bauer    rbauer@mileslegal.com
- Michael Jay Berger    michael.berger@bankruptcypower.com,
  yathida.nipha@bankruptcypower.com
- Aaron De Leest    aed@dgdk.com, DanningGill@gmail.com
- Richard K Diamond    rdiamond@dgdk.com, DanningGill@gmail.com
- Mark Domeyer    mdomeyer@mileslegal.com
- Joseph Garibyan    cmartin@pralc.com
- Eric P Israel    eisrael@dgdk.com, danninggill@gmail.com
- Mehrdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@mccarthyholthus.com
- Lemuel B Jaquez    bjaquez@mileslegal.com
- Cori B Jones    cjones@mileslegal.com
- Thomas E Kent    tekesq@gmail.com,
  tkent@tkentlaw.com;kshin@tkentlaw.com;vramirez@tkentlaw.com
- Gerald S Kim    cdcaecf@bdfgroup.com
- Johnathan J Kirby    Johnathan.Kirby@JeffersonCapitalInternational.com
- Bonni S Mantovani    cmartin@pralc.com
- Alvin Mar    alvin.mar@usdoj.gov
- Ron Maroko    ron.maroko@usdoj.gov
- John J Menchaca (TR)    jmenchaca@menchacacpa.com,
  ca87@ecfcbis.com;igaeta@menchacacpa.com
- Susan I Montgomery    susan@simontgomerylaw.com
- Kelly M Raftery    bknotice@mccarthyholthus.com
- Cassandra J Richey    cmartin@pprlaw.net
- Kenneth G Ruttenberg    , ecf@bass-associates.com
- Brian H Tran    btran@mileslegal.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Darlene C Vigil    cdcaecf@bdfgroup.com